IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BROOKS D. HOWTON, | ) | CASE NO. 3:19CV71 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN JAMES HAVILAND, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Brooks Howton ("Petitioner" or "Howton") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Howton is detained at the Allen Oakwood Correctional Institution, having been found guilty by an Allen County, Ohio, Court of Common Pleas jury of one count each of aggravated burglary, kidnapping, felonious assault, and rape. *State v. Howton,* Case No. CR2015-0300 (Allen Cty. Common Pleas Ct., filed May 4, 2016). The trial court sentenced Howton to 6 years each for aggravated burglary and kidnapping, 8 years for felonious assault and an additional 10 years for being a repeat violent offender, and 11 years for rape and an additional 10 years for being a repeat violent offender, to be served consecutively, for a total prison term of 51 years. Doc. 8-1, p. 51.

On December 21, 2018, Howton filed his Petition for Writ of Habeas Corpus setting forth five grounds for relief. Doc. 1, pp. 5-13. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Howton's grounds for relief are not cognizable, procedurally defaulted, and/or fail on the merits. Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED** in part and **DENIED** in part.[1]

---

[1] The grounds in the petition that are not cognizable and procedurally defaulted results in a dismissal; the

1

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Allen County Court of Appeals, Third Appellate District of Ohio:

> {¶ 2} On August 7, 2015, AD woke up at 7:28 a.m. to the sound of Howton knocking on her bedroom window. Doc. 144 at 200. Though AD lived with her mother, Darcie Simpson ("Simpson"), AD was alone in her house on this morning because Simpson was away at work. *Id*. At this time, AD and Howton were dating and had a sexual relationship. *Id*. at 199. Howton occasionally stayed overnight at Simpson's house in AD's room, but he did not live there. *Id*. at 203. From outside the window, Howton asked AD to let him inside the house, and she promptly unlocked her door and let him in the house. *Id*.
>
> {¶ 3} Once he was inside, AD began to walk towards her bedroom because she wanted to go back to sleep. *Id*. at 272. She did not invite Howton to come with her into the bedroom. *Id*. As she was walking, Howton began questioning her about why she did not answer her phone when he had called her earlier. *Id*. at 273. He then questioned her about whether she was communicating with other men and wanted to check her phone. *Id*. at 274. AD did not allow him to go through her phone, left the room, entered the kitchen, and began doing dishes. *Id*. at 278. Howton followed AD into the kitchen and "kept bumping into [her]" from behind before he "bear hugged [her]." *Id*. at 279. At this point, AD pushed him away from her, told him to "leave [her] alone," and walked back into the living room. *Id*. at 283–284, 287. Howton then followed AD into the living room and sat on AD's lap. *Id*. at 287. At this point, Howton grabbed AD by her wrists, pulled her up from where she was sitting, and began pushing her through the house towards the bedroom. *Id*. at 289.
>
> {¶ 4} Once they reached the bedroom, Howton pushed AD onto the bed, began to undress her, and took off all of her clothing. *Id*. at 206. While he was holding her down on the bed, he grabbed a vibrator that was in the bedroom and forcibly thrust it into AD's vaginal cavity, pushing so hard that AD "jumped." *Id*. at 208–209. After this, Howton asked AD to perform fellatio on him. *Id*. at 209–210. When AD refused, he accused her of engaging in such activity with other men. *Id*. at 210. AD then struck him with her fist in an attempt to get him off of her. *Id*. at 211. In response, Howton put his arm around AD's neck and began to choke her. *Id*. AD struggled against Howton until she passed out. *Id*. at 212. When she regained consciousness, Howton then picked AD up by her neck,

---

ground in the petition that is addressed on the merits results in a denial.

lifted her up, and choked her again until she lost consciousness a second time. *Id*. at 213. When AD regained consciousness this time, she was on the floor beside the bed; her nose was bleeding; and she was out of breath. *Id*. She begged Howton to let her get her inhaler from her purse, but he did not allow her to do so and began slapping her. *Id*. at 213–214. AD's nose continued to bleed, and she reached for a tee shirt to wipe the blood from her face. *Id*.

{¶ 5} At this point, Howton said, "I'm going to leave 'cause I know you're going to call the police on me." *Id*. at 302. As he was leaving, however, he noticed that some blood had gotten on his shoes. *Id*. at 302–303. Howton then ordered AD to start the washing machine to remove traces of the blood from the bedding and his shoes. *Id*. at 215–216, 306. After the washing machine had been started, Howton began apologizing to AD and asked her to come into the living room with him. *Id*. at 308. Once they were in the living room, AD sat down on the floor and said, "I don't want you touching me. * * * I want to be by myself. I don't want to do anything with you." *Id*. at 310. Howton then spread out a comforter on the floor of the living room and told AD to lay down with him on the comforter. *Id*. at 218, 310. When AD refused, Howton began undressing AD, put his arm around her, and pulled her to the floor. *Id*. at 219. During his testimony, Howton estimated that the time period between their struggle in the bedroom and this interaction in the living room could have been up to an hour. Doc. 145 at 597. During this process, AD was crying, and Howton told her to stop sobbing. Doc. 144 at 218–219. Howton then performed oral sex on her and then engaged in phallic penetration of her vaginal cavity. *Id*. at 219–220, 313.

{¶ 6} About ten minutes later, Howton fell asleep. *Id*. at 315. AD then sat up, which awakened Howton. He said, "[N]o, lay back down; lay back down." *Id*. at 315. AD said, in response, "I got to pee." *Id*. AD then went into the restroom, locked the door, and climbed out of the bathroom window. *Id*. at 316. She then went to a neighbor's house and called for help. *Id*. at 328. When the police arrived, AD told them that Howton was in her house. *Id*. at 332. The police knocked on the front door of AD's house, which was locked, and requested entry, but no one answered. Doc. 143 at 151. In between 11:00 and 11:30 that morning, Simpson, who was at work, was contacted by her sister over the phone and told what had happened to AD. *Id*. at 186. Simpson drove home and gave the police a key to the house. *Id*. at 189. The police were then able to gain entry into the house, found Howton in AD's bedroom, and arrested him without incident. *Id*. at 155–156. Doc. 144 at 335.

{¶ 7} On September 17, 2015, Howton was charged with one count of aggravated burglary in violation of R.C. 2911.11(A)(1), 2911.11(B); one count of kidnapping in violation of R.C. 2905.01(A)(4), 2905.01(C)(1); one count of felonious assault in violation of R.C. 2903.11(A)(1), 2903.11(D)(1)(a); two counts of rape in violation of R.C. 2907.02(A)(2), 2907.02(B); and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), 2921.12(B). Doc. 3. The sixth count, which charged Howton with tampering with evidence, was later dismissed on the motion of the prosecution. Doc. 143 at 1.

{¶ 8} The trial occurred in between April 26, 2016, and May 3, 2016. During trial, Howton chose to testify as part of the Defense's case-in-chief. Doc. 145 at 559. In his testimony, Howton claimed that the sexual encounters between him and AD were consensual. *Id*. at 576–577. He alleged that, during one of these encounters in the bedroom, AD indicated to him that she wanted him to stop. *Id*. at 583. He claimed that he, in response, stopped and, admitting that he was "lightweight intoxicated," began to taunt her mildly. *Id*. at 583–584. He then testified that AD hit him in the face but admitted that he choked her as retaliation before pushing her onto the bed and smacking her several times. *Id*. at 588.

{¶ 9} In reference to this altercation, the following exchange took place between Howton's defense counsel and Howton at trial.

> **Q. Okay. Did everything stop as far as any sort of her trying to come at you or anything? Did that all stop?**
> **A. After her nose started bleeding she sat on the bed. The bed had a couple of blood drops on it, which is her bed, closer to the south most part of the house.**
> **Q. Okay.**
> **A. Okay. She sat on the bed. She cried a little bit. I talked to her to let her know that I was tired of her putting her hands on me and stuff. She stayed in there for a little bit. Like I said, I told her I was about to leave because I felt like she made me, she forced this on herself.**
> **Q. Okay.**
> **A. I felt like she made me get out of *my character* and, you know, put my hands on her after she put her hands on me first**.

(Emphasis [in original].) *Id*. at 593–594. Howton testified on direct examination that he apologized to AD. He described this conversation at trial, saying,

> **A. But I was also explaining to her that over and over and over we had had this type of situation.**
> **Q. Okay.**
> **A. Which ultimately I'm the one always getting hit. I'm always getting—I'm the one always getting smacked. I'm the one always getting punched. I mean—so this—it wasn't—I don't think it was avoidable, but I started letting her know, like, you know, 'I'm sorry for doing that, but I told you that you needed to stop.'**
> **Q. Now, why do you think—why do you think it should have been avoidable? Do you mean on your part?**
> **A. Yea, it should have been avoidable on my part because, like my family said, man, you know, I complained about this the whole time. I should have done left.**
> **Q. Should you have had more self-control even though you were getting hit?**
> **A. Yea, I should have had more self-control because I'm a man and, you know, *I don't feel like it's right for a man to hit a woman*. But—**
> **Q. Is that why you were apologizing?**
> **A. Yes, sir.**

4

(Emphasis [in original].) *Id*. at 596–597. Howton then alleged that they had consensual "make-up sex" in the living room after his apology. *Id*. at 598. Howton's defense counsel then began questioning Howton about the subsequent police investigation.

> **Q. Okay. Well, when you were talking to Detective Neidemire, again, you were asking about this rape/burglary thing?**
> **A. Yes, sir.**
> **Q. Did you keep telling him that you didn't rape anybody?**
> **A. I always told him that I didn't.** *I ain't never been known to be no person like that*.

(Emphasis [in original].) *Id*. at 610.

{¶ 10} After these exchanges between Howton and his defense counsel on direct examination on April 28, 2016, the State stated the following on the record:

> **[I]n light of the defendant talking about character and things of that nature, his own character, the State is intending to introduce some things which pursuant to 404(B) we need to put Mr. Chamberlain on notice of. But, like I said, there's a lot of things in the works. I've got people out investigating a couple of things right now as we speak. The first thing tomorrow morning, or even tonight, I could possibly e-mail Mr. Chamberlain to give him more precise information as to what I'm talking about.**

[Emphasis in original] *Id*. at 617. After conducting further investigation that evening, the prosecutor emailed defense counsel the names of two witnesses that the State intended to call for the purpose of rebutting Howton's statements about these offenses being inconsistent with his good character. *Id*. at 620–622, 625.

{¶ 11} While the State had the name of one of these witnesses—SS—for two or three weeks prior to trial, the prosecutor informed the court that she, based upon her experience, did not anticipate that Howton would, even if he chose to testify, make statements that would make his character an issue. *Id*. at 622. SS's name had been disclosed to defense counsel orally, but SS's name was not in the list of witnesses that the State planned on calling to testify. *Id*. at 637. The prosecutor only became aware of the other witness—AH—during the course of the trial. *Id*. at 652–653. Doc. 105. On April 29, 2016, the court determined that, on direct examination, Howton had 'opened the door' to character evidence being presented on rebuttal and found that the prosecutor had not committed a Crim.R. 16 violation in failing to disclose the names of SS and AH prior to trial. *Id*. at 657–658. Further, the trial court also granted defense counsel's request for a continuance, giving Howton's counsel the weekend to prepare for the rebuttal testimony of SS and AH. *Id*. at 647–648. On May 2, 2016, the State called SS and AH as rebuttal witnesses. Doc. 146 at 704, 713.

*State v. Howton*, 2017 WL 2628060, at *1-3 (Oh. Ct. App. June 19, 2017).

5

**A. State Court Action**

On September 17, 2015, the Allen County grand jury charged Howton with aggravated burglary (Ohio Rev. Code §§ 2911.11(A)(1), 2911.11(B)), kidnapping (R.C. §§ 2905.01(A)(4), 2905.01(C)(1)), felonious assault (R.C. §§ 2903.11(A)(1), 2903.11(D)(1)(a)), and two counts of rape (R.C. §§ 2907.02(A)(2), 2907.02(B)), all with repeat violent offender specifications (R.C. §§ 2941.149(A)), and one count of tampering with evidence (R.C. §§ 2921.12(A)(1), 2921.12(B)).  Doc. 8-1, pp. 4-8.  The rape alleged in count four occurred in the victim's bedroom and the rape alleged in count five occurred in the victim's living room.  Doc. 8-1, p. 11.  Howton, through counsel, pleaded not guilty.  Doc. 8-1, p. 13.

Howton moved to suppress statements he made when the police interrogated him.  Doc. 8-1, pp. 14-18.  The trial court held a suppression hearing (Doc. 8-2) and denied Howton's motion.  Doc. 8-1, pp. 21-28.

The morning of trial the state dismissed the tampering with evidence charge.  Doc. 8-3, pp. 10-11.  During trial, Howton filed a motion for leave to file a motion in limine under seal on other acts evidence, which the state opposed.  Doc. 8-1, pp. 29-35.  The trial court granted Howton's motion to file a motion in limine under seal (Doc. 8-1, p. 37) but denied his motion on the merits and granted defense counsel a continuance to prepare for the testimony of two state rebuttal witnesses.  Doc. 8-6, pp. 40-50.

A jury found Howton guilty of aggravated burglary, kidnapping, felonious assault, and the second rape charge, alleged to have occurred in living room.  Doc. 8-1, pp. 43-47.  The jury could not reach a verdict on the rape alleged to have occurred in the bedroom and the court declared a mistrial on that count.  Doc. 8-1, p. 47.  On June 13, 2016, the trial court found that none of the counts merged and sentenced Howton to 6 years each for aggravated burglary and kidnapping, 8 years for felonious assault and an additional 10 years for being a repeat violent

6

offender, and 11 years for rape and an additional 10 years for being a repeat violent offender, to be served consecutively, for a total prison term of 51 years. Doc. 8-1, p. 51.

### B. Direct Appeal

On July 8, 2016, Howton, through new counsel, filed an appeal in the Ohio Court of Appeals, Third Appellate District. Doc. 8-1, p. 54. He raised the following assignments of error:

> 1. The trial court erred in sentencing Howton, when it determined that rape and kidnapping were not allied offenses.
>
> 2. The trial court abused its discretion when it permitted the State to call rebuttal witnesses that it did not disclose before trial but it reasonably anticipated, and allowed the state to impermissibly present evidence of other acts by the defendant through those rebuttal witnesses.
>
> 3. Howton received ineffective assistance of counsel when his attorney failed to request a jury instruction for aggravated assault.

Doc. 8-1, pp. 63-64. On June 19, 2017, the Ohio Court of Appeals affirmed the trial court's judgment. Doc. 8-1, pp. 187-215.

On July 28, 2017, Howton, through counsel, appealed to the Ohio Supreme Court. Doc. 8-1, pp. 217-218. In his memorandum in support of jurisdiction, he raised the following propositions of law:

> I. A party must disclose rebuttal witness under Crim.R. 16(I) when they are aware of circumstances that make it reasonably foreseeable that they might call the witness. The reasonable anticipation standard does not require certainty.
>
> II. A trial court must provide a jury instruction when the evidence permits the jury to reasonably render the desired verdict of the proponent of the requested instruction.
>
> III. A defendant receives ineffective assistance of counsel when his or her lawyer fails to request a jury instruction that would have been beneficial to the defendant, and no reasonable strategy justifies its omission.

Doc. 8-1, p. 221. On January 31, 2018, the Ohio Supreme Court declined jurisdiction. Doc. 8-1, p. 237.

### C. Application to Reopen pursuant to Ohio Rule 26(B)

On September 14, 2017, Howton, pro se, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B). Doc. 8-1, p. 238. He asserted that appellate counsel was ineffective for omitting the following five assignments of error on appeal:

    1. Illegally Questioned
    2. Relevance (as Defined by Federal rule of evidence 402)
    3. Hearsay Testimony
    4. Allied Offense
    5. Prosecutor Misconduct

Doc. 8-1, pp. 241-247. On October 24, 2017, the Ohio Court of Appeals denied Howton's application, finding that he failed to show any genuine issue as to whether he was deprived of effective assistance of counsel on appeal. Doc. 8-1, p. 249-250. Howton did not appeal to the Ohio Supreme Court.

### D. Federal Habeas Petition

On December 21, 2018, Howton, pro se, filed his Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:

> **Ground One**: The trial court erred in sentencing Howton, when it determined that rape and kidnapping were not allied offenses. R.C. 2941.25; *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182; June 13, 2016 Sentencing Hearing at Tr. 23-24; June 13, 2016 Judgment Entry.
>     **Supporting facts:** The Petitioner argues by the terms of the bill of particulars, the kidnapping in his case was incidental to the rape. The Bill of particulars provided that the petitioner "did by force, threat, or deception, remove the alleged victim from the place they was found and/or restrained their liberty for the purpose of engaging in sexual activity.["] Moreover, the offenses are allied. The restraint was not prolonged, as only the restraint related to the sexual activity is what constitutes the kidnapping charge. There was no animus to the kidnapping charge beyond restraint related to the rape charge. Because there was no separate conduct, animus, or harm, the kidnapping and rape offenses should have been found to be allied offenses and merged at sentencing.
>
> **Ground Two**: The trial court abused its discretion when it permitted the State to call rebuttal witnesses that it did not disclose before the trial but it reasonably anticipated, and allowed the state to impermissibly present evidence of other acts by the defendant through those rebuttal witnesses. Crim.R. 16(B), 16(I); Evid.R. 494, 405, 608, 609. Volume 4, Tr. 621-24, 657-59.
>     **Supporting facts:** The State by its own admission knew it would be calling specific witnesses if the petitioner took the stand and testified regarding his character.

8

>The State failed to disclose any such witness until after he took the stand and testified. Thereafter, the State called four witnesses to testify regarding his bad character. Additionally, the trial court erred in allowing the undisclosed witnesses to testify. The State did not disclose any rebuttal witnesses. The State gave a conflicting explanation: that it had orally given names to defense counsel when discussing the fact that he would likely testify. The trial court erred in allowing extrinsic evidence of other acts.
>
>**Ground Three**: Howton received ineffective assistance of counsel when his attorney failed to request a jury instruction for aggravated assault. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10, of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d. 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Volume 4, Tr. 776-83.
>        **Supporting facts:** The petitioner asserts his counsel was ineffective in violation of the Sixth Amend. by failing to request a jury instruction on aggravated assault in light of the evidence of provocation. If accepted would result in him being convicted of the inferior degree offense of aggravated assault, R.C. 2903.12. His counsel instead argued that consent was a full defense to aggravated assault. This was not a reasonable strategy, because consent is not a defense to felonious assault. Because his counsel failed to request the correct instruction, he received a twelvefold increase in his sentence for assault.
>
>**Ground Four**: The petitioner was illegally questioned by the detective during his interview while knowing he was under the influence of alcohol (intoxicated).
>        **Supporting facts:** The Detective Steven Stechschulte questioned and took statements from the petitioner while knowing th[at] he was in fact under the influence of alcohol. Petitioner alcohol level was .096 which was without a doubt over the legal limit. Therefore, the questioning by the detective violates due process of law.
>
>**Ground Five**: The petitioner was deprived of a fair trial due t[o] the prosecutor's misconduct.
>        **Supporting facts:** The prosecutor allowed several officers including other witnesses for the State to remain in the courtroom during the petitioner's testimony. Thereafter, these witnesses were allowed to testify at trial upon hearing petitioner's testimony. Thereby, violating his right to a fair trial.

Doc. 1, pp. 5-13. On April 12, 2019, Respondent filed a Return of Writ. Doc. 8. Howton did not file a Traverse and the time within which to do so has passed. In the Return of Writ, Respondent argues that Howton's grounds for relief are not cognizable, procedurally defaulted, and/or fail on the merits. Doc. 8, pp. 19-31.

## II. Legal Standard

9

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts")). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his

10

claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501

11

U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review.** In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002);

12

*Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Ineffective Assistance of Counsel.** The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. A petitioner must show that counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, the result of the proceedings would have been different. *Id.*, at 687-691, 694. Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeal's decision on the merits of that claim, under AEDPA. *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). The *Strickland* standard

also applies to an ineffective assistance of appellate counsel claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

### III. Analysis

**A. Ground One is procedurally defaulted.**

In Ground One, Howton argues that the trial court erred when it determined that rape and kidnapping were not allied offenses. Doc. 1, pp. 5, 8. Ground One is procedurally defaulted because Howton did not raise this claim in his direct appeal to the Ohio Supreme Court; *i.e.*, he did not pursue this claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848); *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015) (a petitioner must present his claim to the Ohio Court of Appeals and the Ohio Supreme Court). Howton does not allege cause to excuse his procedural default. In the event that he had alleged ineffective assistance of appellate counsel as cause, it would fail because a defendant does not have a constitutional right to counsel for a discretionary appeal to the Ohio Supreme Court. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals[,]" citing *Wainwright v. Torna*, 455 U.S. 586 (1982), *Ross v. Moffitt*, 417 U.S. 600 (1974)); *see also Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 432 (6th Cir. 2006) ("There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment[[,]" citing *Coleman*, 501 U.S. at 752).

Furthermore, Howton has not shown a fundamental miscarriage of justice if his claim is not considered. *Coleman*, 501 U.S. at 750. To do so he must show that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence

14

"requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Howton has not identified any such evidence. Ground One is procedurally defaulted.

### B. Both claims in Ground Two are not cognizable and the second claim is also procedurally defaulted and fails on the merits

In Ground Two, Howton argues that the trial court erred when it allowed the state to call rebuttal witnesses at trial that were not disclosed before trial. Doc. 1, p. 8. He also alleges that the trial court impermissibly allowed the state to present "other acts" evidence. Doc. 1, p. 8.

#### 1. The claim that rebuttal witnesses were not disclosed before trial is not cognizable

Howton argues that the trial court abused its discretion when it permitted the state to call rebuttal witnesses in violation of Ohio Criminal Rule 16(I), which governs the discovery of witnesses at trial. Doc. 1, pp. 5, 8; see also Doc. 8-1, pp. 80-85 (Howton's brief on direct appeal to the Ohio Court of Appeals); Doc. 8-1, pp. 226-230 (Howton's brief to the Ohio Supreme Court). This claim is not cognizable because Howton alleges only that the trial court violated a state discovery rule. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002), *corrected on reh'g*, 307 F.3d 459 (rejecting the petitioner's claim that the prosecutor violated Ohio Criminal Rule 16 when it failed to disclose the identity of a rebuttal witness as not cognizable because it does not describe a constitutional violation); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004).

#### 2. The claim regarding "other acts" evidence is procedurally defaulted, not cognizable, and fails on the merits

Howton argues that the trial court abused its discretion when it permitted the state to

15

present evidence of other acts through its rebuttal witnesses. Doc. 1, pp. 6, 8. This claim is procedurally defaulted because, although Howton presented the first portion of Ground Two regarding the discovery of witnesses to the Ohio Supreme Court on direct appeal, he did not present this "other acts" portion of Ground Two to the Ohio Supreme Court as he is required to do to avoid procedurally defaulting this claim. See 8-1, pp. 226-230 (Howton's brief in support of jurisdiction to the Ohio Supreme Court); *Williams*, 460 F.3d at 806. He does not allege cause to excuse his procedural default or demonstrate that he is actually innocent.

Moreover, this claim is not cognizable because it was presented to the Ohio Court of Appeals as a violation of Ohio evidentiary rules (Doc. 8-1, pp. 85-86), not as a federal constitutional violation. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (admissibility of evidence pursuant to state law is not a basis for federal habeas corpus review). Finally, this claim fails on the merits because "the admission of prior bad acts evidence [i]s not contrary to clearly established Supreme Court precedent." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Flakes v. Campbell*, 2019 WL 3814338, at *2 (6th Cir. June 5, 2019).

### C. Ground Three fails on the merits

In Ground Three, Howton argues that trial counsel was ineffective for failing to request a jury instruction for aggravated assault in light of the evidence at trial regarding provocation. Doc. 1, pp. 9, 10. The Ohio Court of Appeals described his claim as follows:

> {¶ 33} In his third assignment of error, Howton argues that he was prejudiced by the ineffective assistance of his trial counsel. While Howton was testifying, defense counsel asked him several questions about whether AD struck Howton first and argued in closing statements that Howton's violent actions were provoked by AD. Doc. 145 at 587, 593–594, 597, 611. See Doc. 147 at 801–802. On appeal, Howton argues that it was not logical for his trial counsel to make this argument and then not request a jury instruction for aggravated assault. As a consequence, the trial court only gave the jury instructions for the more serious offense of felonious assault. Howton argues that had the jury been given the instructions for aggravated assault, they may have found from these facts that he acted in response to provocation, finding him guilty of a lesser offense. He now requests that this court reverse his conviction for felonious assault and order a new trial.

16

*Howton*, 2017 WL 2628060, at *9. After setting forth the *Strickland v. Washington* ineffective assistance of counsel standard, the Ohio Court of Appeals rejected Howton's argument, explaining,

> {¶ 38} A trial court, however, has the discretion to deny requested jury instructions unless "the requested instructions contain a correct, pertinent statement of the law and are appropriate to the facts * * *." *State v. Lessin*, 67 Ohio St.3d 487, 494, 620 N.E.2d 72, 77 (1993). The following analysis of this case will show that the trial court would not have been obligated to give these jury instructions if they had been requested. Thus, the decision by defense counsel not to request jury instructions for the offense of aggravated assault was a matter of trial strategy and not a failure to act that falls below the standard of reasonableness to which attorneys are held. *See State v. Harrison*, 2015–Ohio–1419, 31 N.E.3d 220, ¶ 89, citing *State v. Morris*, 9th Dist. Summit No. 22089, 2005–Ohio–1136, ¶ 100; *State v. Fisk*, 9th Dist. Summit No. 21196, 2003–Ohio–3149, ¶ 9; *State v. Hill*, 73 Ohio St.3d 433, 443, 653 N.E.2d 271 (1995); *State v. Oates*, 2013–Ohio–2609, 993 N.E.2d 846, ¶ 9 (3d Dist.).
>
> {¶ 39} The elements for the crimes of felonious assault and aggravated assault are identical except that the offense of aggravated assault has "the additional mitigating element of serious provocation." *State v. Deem*, 40 Ohio St.3d 205, 211, 533 N.E.2d 294, 299–300 (1988). *See* R.C. 2903.12. *Compare* R.C. 2903.11.
>
>> **[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault (as a different degree of felonious assault) must be given.**
>
> *Id*. at 300 [Emphasis in original]. Under this rule, "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *Id*., quoting *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (1982), paragraph five of the syllabus.
>
> {¶ 40} In this case, the defendant admitted at trial that he had his arm around AD's throat, grabbed her neck, pushed her, and slapped her. Doc. 145 at 586, 588, 592–593. In letters he sent to AD while he was incarcerated, Howton admitted that he "lost it," was drunk at the time of the incident, "smacked [her] a couple times too hard," "beat [her] up," and choked her. Doc. 146 at 683–685. On appeal, Howton points to the fact that AD punched him one time as the "serious provocation" that prompted his violent response. Courts across Ohio, however, have held that "a victim's simple pushing or punching does not constitute sufficient provocation to warrant an aggravated assault instruction." *State v. Bryan*, 4th Dist. Gallia No. 03CA3, 2004–Ohio–2066, ¶ 24, citing *State v. Koballa*, 8th Dist. Cuyahoga No. 82013, 2003–Ohio–3535; *State v. Pack*, 4th Dist. Pike No. 93CA525, 1994 WL 274429 (June 20, 1994). *State v. Pennington*, 5th Dist. Guernsey No. 16CA14,

2017–Ohio–1423, ¶ 19–20.

{¶ 41} Thus, AD's action was not enough "to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Torres*, 3d Dist. Defiance No. 4–01–06, 2002 WL 418392 (March 18, 2002), quoting *State v. Shane*, 63 Ohio St.3d 630, 637, 590 N.E.2d 272 (1992). Since this evidence was not sufficient under Ohio law to require a jury instruction for aggravated assault, the decision not to request a jury instruction for the offense of aggravated assault was clearly a matter of trial strategy and not evidence of a deficient performance on the part of defense counsel. As Howton has not carried the burden of showing his trial counsel's performance was deficient, his third assignment of error is overruled.

*Id*. at \*10-11.

This Court is bound by the Ohio Court of Appeals' interpretation of the elements of assault offenses under Ohio law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Johnson v. United States*, 559 U.S. 133, 138 (2010). This Court also presumes that the Ohio Court of Appeals' factual findings are correct absent clear and convincing evidence, which Howton does not provide. *See* 28 U.S.C. § 2254(e)(1); *Railey*, 540 F.3d at 397. The Ohio Court of Appeals' finding that trial counsel was not ineffective for failing to request a jury instruction not warranted by the evidence was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. Ground Three fails on the merits.

### D. Ground Four is procedurally defaulted

In Ground Four, Howton argues that he was illegally questioned because the detective who interviewed him knew he was intoxicated. Doc. 1, p. 11. This claim is based on evidence in the record. See Doc. 8-1, pp. 21-28 (trial court order denying Howton's motion to suppress statements made when interrogated by the detective, discussing Howton's alleged intoxication and referencing his breathalyzer results); Doc. 8-2 (transcript of suppression hearing discussing

18

Howton's alleged intoxication and breathalyzer results). Because this claim is based on the record, Howton was required to raise it on direct appeal, which he did not do. *See Hand v. Houk*, 871 F.3d 390, 408 (6th Cir. 2017) (describing Ohio's bifurcated appellate system that requires claims based on evidence within the record to be raised on direct appeal and claims based on evidence outside the record to be raised in collateral proceedings, citing *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013), *State v. Perry*, 226 N.E.2d 104 (Ohio 1967), and *State v. Cole*, 443 N.E.2d 169 (Ohio 1982)). Because Howton was required to raise this claim on direct review and did not, it is procedurally defaulted. *See Williams*, 460 F.3d at 806 (a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court.").

Howton does not allege cause for his procedural default. Ineffective assistance of appellate counsel for failing to raise this claim on direct appeal cannot serve as cause to excuse the procedural default because, although Howton raised this as a reason why appellate counsel was ineffective in his Rule 26(B) Application, he did not appeal the Ohio Court of Appeals' denial of his application to the Ohio Supreme Court. In other words, he procedurally defaulted his ineffective assistance of appellate counsel claim and, therefore, ineffective assistance of appellate counsel cannot serve as cause to excuse his procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 450-451 (2000) (when a petitioner procedurally defaults an ineffective assistance of counsel claim, ineffective assistance of counsel cannot serve as cause to excuse the procedural default of the underlying claim unless the petitioner can show cause and prejudice to excuse the ineffective assistance of counsel procedural default). Howton does not show cause or prejudice to excuse the procedural default of his ineffective assistance of appellate counsel claim. Nor does he demonstrate actual innocence. Ground four is procedurally defaulted.

**E. Ground Five is procedurally defaulted**

In Ground Five, Howton argues prosecutorial misconduct occurred when the prosecutor permitted several state witnesses to remain in the courtroom during Howton's testimony prior to the state witnesses testifying.  Doc. 1, p. 13.  This claim is also based on the record.  See, e.g., Doc. 8-6, pp. 42-45, 54, 57, 125-126, 130-131, 147-148 (trial transcript discussing the fact that a state witness was in the courtroom during Howton's testimony).[2]  For the same reasons explained above in Ground Four, Ground Five is procedurally defaulted, Howton does not allege cause to excuse the procedural default, any ineffective assistance of appellate counsel claim that could be alleged as cause has itself been procedurally defaulted, and Howton does not demonstrate actual innocence.  Ground Five is procedurally defaulted.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Howton's habeas Petition be **DISMISSED in part and DENIED in part**.


Dated: October 25, 2019

/s/ Kathleen B. Burke

Kathleen B. Burke
United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[2] The trial court also permitted Howton to present a witness for sur-rebuttal who was present during his testimony over the prosecutor's objection.  See Doc. 8-6, pp. 51-52, 143-144.

20